**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **WP COMPANY LLC d/b/a THE WASHINGTON POST**, <br><br> 1301 K St. NW <br> Washington, DC 20071 <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY**, <br><br> 2707 Martin Luther King Jr. Ave. SE <br> Washington, DC 20528 <br><br> **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,** <br><br> 500 12th St. SW <br> Washington, D.C. 20536 <br><br> **U.S. CUSTOMS AND BORDER PROTECTION**, <br><br> 1300 Pennsylvania Ave. NW <br> Washington, DC 20229 <br><br> Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff WP Company LLC d/b/a *The Washington Post* ("the *Post*") brings this suit against Defendants the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), and U.S. Customs and Border Protection ("CBP") and states as follows:

### INTRODUCTION

1. This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.

2.      Through FOIA, the *Post* seeks the release of public records to shed light on an issue of immense public interest and intense debate: the use of force by federal immigration enforcement officers and agents.

3.      Releasing these records will let the public see "what their government is up to," *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989), with respect to when, where, and why immigration enforcement officers and agents are using force (including lethal force), how they are documenting those uses of force, and whether those documented uses of force comply with agency policies and regulations, federal law, and the U.S. Constitution.

4.      DHS, ICE, and CBP have historically released these records to the public upon request and also proactively published annual data on use-of-force incidents.

5.      Without explanation and in violation of FOIA, however, all three agencies have failed to disclose any of the public records responsive to the *Post*'s requests.

6.      The *Post* therefore brings this lawsuit to restore transparency and ensure the public can effectively monitor the use of force by federal immigration enforcement officers and agents.

## **PARTIES**

7.      Plaintiff, the *Post*, is a news organization based in Washington, D.C.  It publishes the leading daily newspaper, by print circulation, in the nation's capital, as well as the website washingtonpost.com, which is among the most widely viewed news sites in the U.S., reaching tens of millions of unique visitors per month, according to independent auditor comScore.  The *Post* also offers an array of mobile, tablet, and digital publishing products and apps, both directly and through its operating division, Arc XP, which licenses a comprehensive suite of digital

publishing tools to third-party customers.  But outstanding journalism remains the core of the

*Post*'s work – and has been recognized with more than 75 Pulitzer Prizes since 1917.

8.      Defendant DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1).

9.      Defendant ICE is a component of DHS.  6 U.S.C. § 252(a).

10.      Defendant CBP is a component of DHS.  6 U.S.C. § 211(a).

11.      DHS thus has possession and control of the records that the *Post* requested from

DHS, ICE, and CBP.

12.      ICE also has possession and control of the records the *Post* requested from ICE.

13.      CBP also has possession and control of the records the *Post* requested from CBP.

### JURISDICTION AND VENUE

14.      This action arises under FOIA.  This Court has subject matter jurisdiction over this

action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i).

This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

15.      Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

### FACTUAL ALLEGATIONS

**Increased Federal Immigration Enforcement and Decreased Use-of-Force Training**

16.      Immediately upon his inauguration as the 47th President of the United States,

President Donald Trump made immigration a central focus of his presidency.  His administration

reportedly set a goal of "[d]eporting 1 million immigrants" per year, which, if attained, would far

surpass any previous annual removal record.[1]

---

[1] Maria Sacchetti and Jacob Bogage, *'One million.' The private goal driving Trump's push for mass deportations.*, Wash. Post (Apr. 12, 2025), https://www.washingtonpost.com/immigration/2025/04/12/one-million-deportations-goal/.

17.    Indeed, on the very first day of his second term, President Trump declared that the state of immigration within the United States was a "national emergency," and he authorized the military to assist with "obtaining full operational control of the southern border."[2]

18.    These efforts accelerated in July 2025, when Congress enacted the One Big Beautiful Bill Act and provided DHS with $170 billion in funding for immigration enforcement, including $75 billion for ICE alone.[3]

19.    With the massive increase in funding, ICE began a surge in hiring nationwide, dedicating over $100 million to recruiting new officers and agents, especially from targeted groups including "gun rights supporters," "military enthusiasts," and people who have attended UFC fights.[4]

20.    At the same time, DHS drastically cut its basic training program for new officers and agents.  According to records obtained by the *Post*, DHS cut approximately 240 hours of instructional time—more than 40 percent of the total training period—including hundreds of hours dedicated to hands-on instruction, practice scenarios, firearms training, and post-training evaluation of recruits' skills specific to immigration enforcement and deportation operations.[5]

---

[2] *Declaring a National Emergency at the Southern Border of the United States*, The White House (Jan. 20, 2025), https://www.whitehouse.gov/presidential-actions/2025/01/declaring-a-national-emergency-at-the-southern-border-of-the-united-states/.

[3] Riley Beggin and Jacob Bogage, *ICE would still operate in a partial government shutdown*, Wash. Post (Jan. 28, 2026), https://www.washingtonpost.com/business/2026/01/28/government-shutdown-ice-funding/.

[4] Drew Harwell and Joyce Sohyun Lee, *ICE plans $100 million 'wartime recruitment' push targeting gun shows, military fans for hires*, Wash. Post (Dec. 31, 2025), https://www.washingtonpost.com/technology/2025/12/31/ice-wartime-recruitment-push/.

[5] Sarah Blaskey, *ICE training was slashed, records show, corroborating whistleblower claims*, Wash. Post (Mar. 3, 2026), https://www.washingtonpost.com/investigations/2026/03/03/ice-training-cuts-graduation-rate/.

21.     In fact, a former ICE academy instructor testified at a February 23, 2026 hearing before Congress that the agency had "ceased all of the legal instructions regarding use of force" and removed so many other essential courses from the program that "even in the final days of training, the cadets [could not] demonstrate a solid grasp of the tactics or the law required to perform their jobs."[6]

22.     Public concern about the extent and quality of ICE's training, specifically around the use of force, quickly began to mount, as the government dispatched thousands of federal immigration officers and agents into cities and states across the county.[7]

23.     The concern only increased as certain, extreme uses of force by ICE and CBP drew national and even international attention.[8]  These incidents, however, are likely just a sliver of the use-of-force incidents involving ICE and CBP, most of which never attract public notice.

---

[6] *Sen. Blumenthal and Rep. Garcia Host Forum on Allege Rights Violations by ICE*, C-SPAN (Feb. 23, 2026), at 24:32-26:32, https://www.c-span.org/program/public-affairs-event/sen-blumenthal-and-rep-garcia-host-forum-on-allege-rights-violations-by-ice/673814; *see also* This American Life, *Give a Little Whistle* (Mar. 6, 2026), at 1:38-32:42 (interview of the same former ICE academy instructor), https://www.thisamericanlife.org/give-a-little-whistle.

[7] *Id.*; Mark Berman, Maria Sacchetti, Derek Hawkins, and David Ovalle, *ICE tactics and training under scrutiny after Minneapolis shooting*, Wash. Post (Jan. 10, 2026), https://www.washingtonpost.com/national-security/2026/01/10/minneapolis-shooting-ice-officers-training-policies/.

[8] For example, during "Operation Midway Blitz," in which DHS deployed hundreds of immigration enforcement officers and agents to Illinois, a CBP officer shot Chicago resident Marimar Martinez five times.  Mariana Alfaro, Arelis R. Hernández, Marianne LeVine and Kim Bellware, *ICE launches 'Operation Midway Blitz' targeting immigrants in Chicago*, Wash. Post (Sept. 8, 2025), https://www.washingtonpost.com/immigration/2025/09/08/ice-midway-blitz-chicago-trump/.  Similarly, during "Operation Metro Surge," in which DHS deployed thousands of immigration officers and agents to Minnesota, ICE and CBP officers shot three Minneapolis residents, killing two.  Lauren Kaori Gurley, Justin Jouvenal, Maegan Vazquez, and Samuel Oakford, *Fatal shooting of ICU nurse stirs anger, scrutiny of DHS crackdown in Minneapolis*, Wash. Post (Jan. 25, 2026), https://www.washingtonpost.com/nation/2026/01/24/federal-agents-minneapolis-shooting-investigation/.

**The Agencies' History of Releasing Information on Their Uses of Force**

24.     For several reasons, the public has previously been able to obtain a fair amount of information regarding uses of force by DHS, ICE, and CBP.

25.     First, DHS policy requires that all uses of force be documented.[9]

26.     Second, DHS, ICE, and CBP have historically released records relating to the use of force by federal immigration enforcement officers and agents upon request under FOIA, with limited redactions.[10]

27.     Third, the agencies have in the past regularly summarized all use-of-force incidents in an annual report, which DHS has made publicly available.[11]

28.     Since March 2024, however, DHS has not published any such reports.[12]

29.     Moreover, as explained below, the agencies have now stopped responding to FOIA requests related to the use of force as well.

---

[9] *See* Policy Statement 044-05: Dep't Policy on the Use of Force, U.S. Dep't of Homeland Security (Sept. 7, 2018), https://www.dhs.gov/sites/default/files/publications/mgmt/law-enforcement/mgmt-dir_044-05-department-policy-on-the-use-of-force.pdf.

[10] *See, e.g.*, First Interim Resp. to ICE FOIA No. 2025-ICLI-65, available at https://www.documentcloud.org/documents/26955110-ice-records-regarding-sensitive-zones-workplace-raids-and-enforcement-tactics/; *What We Know About How ICE is Being Trained on the Use of Force*, American Oversight (Feb. 17, 2026), https://americanoversight.org/what-we-know-about-how-ice-is-being-trained-on-the-use-of-force/; DHS Privacy Office Weekly FOIA Report (Dec. 26, 2024 - Jan. 1, 2025) https://www.dhs.gov/sites/default/files/2025-03/0325_25-PRIV-Chief-FOIA-Officer-Report-January-6-2025-March-24-2025.pdf at 15, 31, 51; *Chi. Headline Club v. Noem*, No. 25-cv-12173 (N.D. Ill. 2025), ECF 284-20; *id.*, ECF 284-36; FY2022 Use of Force Incidents, CBP, https://www.cbp.gov/sites/default/files/2025-04/fy22_use_of_force_estar_incidents_part_11_1.pdf.

[11] *See, e.g.*, Office of Homeland Security Statistics, *DHS Use of Force Incidents Fiscal Year 2023*, U.S. Dep't of Homeland Security (Mar. 29, 2024), https://ohss.dhs.gov/sites/default/files/2024-06/24_0329_ohss_dhs-use-of-force-incidents-fy2023.pdf.

[12] Office of Homeland Security Statistics, *Use of Force Incidents*, U.S. Dep't of Homeland Security, https://ohss.dhs.gov/topics/law-enforcement/use-of-force-incidents.

**The First FOIA Request**

30.     On January 16, 2026, the *Post* submitted a FOIA request to ICE seeking "Standard Form 95s,"[13] from "January 1, 2025 until the date" this request "is processed," "filed under the Federal Tort Claims Act for claims of $5,000 or greater," including "[a]ll documentation supporting the claims," "[a]ny documentation produced or gathered by the agency . . . related to the claim," "[t]he agency's disposition of the claim," "[a]ny requests for settlement authority," and "[a]ny requests for expedited settlement."  The *Post* noted that, "[i]n the event there is no formal SF95 filed," it was also requesting "alternative written notifications of a claim, such as letters detailing allegations and damages amounts."  A true and correct copy of the *Post*'s request ("Request 1") is attached as Exhibit A.

31.     The *Post* also noted in Request 1 that ICE "has previously released these records in response to FOIA Requests."  *Id.*

32.     On January 22, 2026, ICE contacted the *Post* regarding Request 1, claiming that on initial "search for responsive records, the ICE FOIA office has determined that further clarification is needed regarding your request."  A true and correct copy of that correspondence is attached as Exhibit B.

33.     The *Post* responded the same day to request that ICE process Request 1 as submitted, and noted that the agency "has previously released these records and is in the process of continuing to release them (in batches) as part of" another FOIA request.  *Id.*

---

[13] A "Standard Form 95" is the form commonly "used to present claims against the United States under the Federal Tort Claims Act (FTCA) for property damage, personal injury, or death allegedly caused by a federal employee."  *See* Documents and Forms, U.S. Dep't of Justice, Civil Division, https://www.justice.gov/civil/documents-and-forms-0.

34. On January 26, 2026, ICE acknowledged receipt of the *Post*'s request, assigning it tracking number 2026-ICFO-12070. A true and correct copy is attached as Exhibit C.

35. In its acknowledgement, ICE claimed that the *Post*'s request would "necessitate a thorough and wide-ranging search," such that FOIA "permit[s] a 10-day extension" to respond under 5 U.S.C. § 552(a)(6)(B). *Id*.

36. ICE's January 26 acknowledgment did not specify a date by which it would make a determination on the *Post*'s request, as required by law. 5 U.S.C. § 552(a)(6)(B)(i).

37. The *Post* has not received any further communication or response from either ICE or DHS regarding Request 1 since the January 26 acknowledgement.

**The Second FOIA Request**

38. On January 20, 2026, the *Post* submitted a FOIA request to CBP seeking "Standard Form 95s," from "January 1, 2025 until the date" this request "is processed," "filed under the Federal Tort Claims Act for claims of $5,000 or greater," including "[a]ll documentation supporting the claims," "[a]ny documentation produced or gathered by the agency . . . related to the claim," "[t]he agency's disposition of the claim," "[a]ny requests for settlement authority," and "[a]ny requests for expedited settlement." The *Post* noted that, "[i]n the event there is no formal SF95 filed," it was also requesting "alternative written notifications of a claim, such as letters detailing allegations and damages amounts." A true and correct copy of the *Post*'s request ("Request 2") is attached as Exhibit D.

39. The *Post* also noted in Request 2 that CBP "has previously released these records in response to FOIA requests." *Id*.

40. On January 21, 2026, CBP acknowledged receipt of the *Post*'s request, assigning it tracking number CBP-FO-2026-049042. A true and correct copy is attached as Exhibit E.

41.     In its acknowledgement, CBP claimed that the *Post*'s request "seeks a voluminous amount of separate and distinct records," the subject of which "is of substantial interest to two or more components of CBP or of substantial interest to another agency," such that FOIA "permit[s] a 10-day extension" to respond under 5 U.S.C. § 552(a)(6)(B).  *Id*.

42.     CBP's January 21 acknowledgment did not specify a date by which it would make a determination on the *Post*'s request, as required by law.  5 U.S.C. § 552(a)(6)(B)(i).

43.     The *Post* has not received any further communication or response from either CBP or DHS regarding Request 2 since the January 21 acknowledgement.

**The Third FOIA Request**

44.     On January 21, 2026, the *Post* submitted a FOIA request to CBP seeking "[c]opies of incident reports . . . for entry into the Enforcement Action Statistical Analysis and Reporting System (E-STAR)"[14] and "firearm discharge reports," from "Jan. 1, 2025 through the date that this request is processed."  A true and correct copy of the *Post*'s request ("Request 3") is attached as Exhibit F.

45.     The *Post* also noted in Request 3 that CBP "has previously publicly released these types of records," and the *Post* linked to several publicly available websites containing the same types of records that the *Post* sought through Request 3.  *Id*.

46.     On February 7, 2026, CBP acknowledged receipt of the *Post*'s request, assigning it tracking number CBP-FO-2026-049681.  A true and correct copy is attached as Exhibit G.

---

[14] The "Enforcement Action Statistical Analysis and Reporting" or "E-STAR" system is an internal reporting mechanism for "CBP personnel to personally report assaults made against them during an encounter while on-duty or off-duty, as well as use of force incidents."  Dep't of Homeland Security, *Privacy Impact Assessment Update for the Joint Integrity Case Management System (JICMS)* at 11 (Feb. 4, 2025), https://www.dhs.gov/sites/default/files/2025-02/25_0210_priv_pia-cbp-044-jicms%28a%29%20%281%29.pdf.  Its purpose is "to report and track the occurrence of use of force events" involving CBP.  *Id*. at 4.

47.    In its acknowledgement, CBP claimed that the subject of the *Post*'s request "is of substantial interest to two or more components of CBP or of substantial interest to another agency," such that FOIA "permit[s] a 10-day extension" to respond under 5 U.S.C. § 552(a)(6)(B).  Ex. G.

48.    CBP's February 7 acknowledgment did not specify a date by which it would make a determination on the *Post*'s request, as required by law.  5 U.S.C. § 552(a)(6)(B)(i).

49.    The same day, CBP separately responded to deny the *Post*'s request for expedited handling of its request.  A true and correct copy of that correspondence is attached as Exhibit H.

50.    The *Post* has not received any further communication or response from either CBP or DHS regarding Request 3 since February 7.

**The Fourth FOIA Request**

51.    On January 23, 2026, the *Post* submitted a FOIA request to ICE seeking "Use of Force, Assaults, and Discharge (UFAD) reports, including any supplemental memos or narrative reports further detailing any incident, from Jan. 1, 2025 to the date of the processing of this request." [15]  A true and correct copy of the *Post*'s request ("Request 4") is attached as Exhibit I.

52.    The *Post* also noted in Request 4 that ICE "has previously released these records in response to FOIA Requests," and the *Post* linked to a publicly available website containing the same types of records that the *Post* sought through Request 4.  *Id.*

---

[15] "Use of Force, Assaults, and Discharges" or "UFAD" is a "reporting process" used by ICE that "is automatically initiated after a use of force incident has been first reported in an ICE Significant Incident Report (SIR) within the ICE Significant Event Notification (SEN) system." ICE, *ICE Directive 17012.2: Reporting and Investigating Threats and Assaults Against ICE Employees and Facilities* at 6 n.3 (Jan. 29, 2020), https://www.ice.gov/doclib/foia/policy/REL25248.pdf.  Both E-STAR for CBP and UFAD for ICE "record the assault location, actions taken, weapons used in each incident, and any resulting injuries."  DHS OIG, *Assaults on CBP and ICE Law Enforcement Officers* at 4 (Sept. 4, 2018), https://www.oig.dhs.gov/sites/default/files/assets/2018-09/OIG-18-76-Sep18.pdf.

53.     On February 4, 2026, ICE acknowledged receipt of the *Post*'s request, assigning it tracking number 2026-ICFO-13050.  A true and correct copy is attached as Exhibit J.

54.     In its acknowledgement, ICE claimed that the *Post*'s request would "necessitate a thorough and wide-ranging search," such that FOIA "permit[s] a 10-day extension" to respond under 5 U.S.C. § 552(a)(6)(B).  *Id*.

55.     ICE's February 4 acknowledgment did not specify a date by which it would make a determination on the *Post*'s request, as required by law.  5 U.S.C. § 552(a)(6)(B)(i).

56.     The *Post* has not received any further communication or response from either ICE or DHS regarding Request 4 since the February 4 acknowledgement.

**The Fifth FOIA Request**

57.     On February 13, 2026, the *Post* submitted a FOIA request to DHS seeking "Standard Form 95s," from "January 1, 2025 until the date" this request "is processed," "filed under the Federal Tort Claims Act for claims of $5,000 or greater," including "[a]ll documentation supporting the claims," "[a]ny documentation produced or gathered by the agency . . . related to the claim," "[t]he agency's disposition of the claim," "[a]ny requests for settlement authority," and "[a]ny requests for expedited settlement."  The *Post* noted that, "[i]n the event there is no formal SF95 filed," it was also requesting "alternative written notifications of a claim, such as letters detailing allegations and damages amounts."  A true and correct copy of the *Post*'s request ("Request 5") is attached as Exhibit K.[16]

---

[16] The *Post* also noted that it submitted Request 5 to the DHS Privacy Office because "some claimants have filed tort claims to DHS because they are unaware of which agency employs the officers/agents that are alleged to have caused damage or injuries," and "the DHS Privacy Office includes the DHS Office of the General Counsel and the DHS Office of Secretary."  *Id*.

58.     The *Post* also noted in Request 5 that DHS "has previously released these records in response to FOIA Requests." *Id.*

59.     The request was assigned tracking number 2026-HQFO-01857.

60.     The *Post* has not received any further communication or response from DHS regarding Request 5, including to acknowledge receipt of the request.

61.     Because DHS has yet to acknowledge the request, it has not specified a date by which it would make a determination on the *Post*'s request, as required by law. 5 U.S.C. § 552(a)(6)(B)(i).

**The Sixth FOIA Request**

62.     On February 24, 2026, the *Post* submitted a FOIA request to ICE seeking "ICE Significant Incident Reports (i.e. 'SIR's) from Jan. 1, 2025 to the date of the processing of this request." A true and correct copy of the *Post*'s request ("Request 6") is attached as Exhibit L.

63.     The *Post* also noted in Request 6 that ICE "has previously released these records in response to FOIA Requests," and the *Post* cited to several public lawsuits and linked to a publicly available website containing the same types of records that the *Post* sought through Request 6. Ex. L.

64.     The request was assigned tracking number 2026-ICFO-18410.

65.     The *Post* has not received any further communication or response from ICE regarding Request 6, including to acknowledge receipt of the request.

66.     Because ICE has yet to acknowledge the request, it has not specified a date by which it would make a determination on the *Post*'s request, as required by law. 5 U.S.C. § 552(a)(6)(B)(i).

**The Agencies' Failures To Respond**

67.     To date, none of the Defendants have produced any records responsive to any of the *Post*'s requests.

68.     To date, none of the Defendants have informed the *Post* as to the scope of the records, if any, that the agency will produce in response to any of the requests.

69.     To date, none of the Defendants have provided a timetable for the production of any records in response to any of the *Post*'s requests.

70.     To date, none of the Defendants have cited any allegedly applicable FOIA exemption(s) or otherwise identified any basis for withholding, in whole or in part, any of the requested records.

**CLAIMS FOR RELIEF**

**COUNT I**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Request 1 in Violation of FOIA, 5 U.S.C. § 552**

71.     The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

72.     FOIA provides this Court with "jurisdiction to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]." 5 U.S.C. § 552(a)(4)(B).

73.     The records the *Post* seeks are agency records within ICE's control.

74.     FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify the requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

75.     ICE received Request 1 on January 16, 2026.  Ex. A.

76.    Pursuant to FOIA, ICE was required to respond to Request 1 by February 17, 2026. 5 U.S.C. § 552(a)(6)(A)(i).

77.    Even assuming that the 10-day extension permitted under 5 U.S.C. § 552(a)(6)(B) applied here, ICE was required to respond to Request 1 no later than March 3, 2026.

78.    To date, however, ICE has not made and communicated to the *Post* a "determination" on Request 1 within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

79.    ICE's failure to respond constitutes a constructive denial of Request 1 under FOIA.

80.    There is no basis under FOIA to withhold, in whole or in part, the records requested by the *Post* in Request 1.  ICE has wrongfully withheld agency records in violation of FOIA.

81.    The *Post* requests a declaratory judgment that ICE has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

82.    The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court direct ICE to produce the requested agency records in full and set a deadline for compliance.

**COUNT II**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Request 2 in Violation of FOIA, 5 U.S.C. § 552**

83.    The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

84.    FOIA provides this Court with "jurisdiction to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]."  5 U.S.C. § 552(a)(4)(B).

85.    The records the *Post* seeks are agency records within CBP's control.

86.    FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify the requester of, *inter alia*, the scope of the documents that the agency will produce

and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

87.    CBP received Request 2 on January 20, 2026.  Ex. D.

88.    Pursuant to FOIA, CBP was required to respond to Request 2 by February 17, 2026. 5 U.S.C. § 552(a)(6)(A)(i).

89.    Even assuming that the 10-day extension permitted under 5 U.S.C. § 552(a)(6)(B) applied here, CBP was required to respond to Request 2 no later than March 3, 2026.

90.    To date, however, CBP has not made and communicated to the *Post* a "determination" on Request 2 within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

91.    CBP's failure to respond constitutes a constructive denial of Request 2 under FOIA.

92.    There is no basis under FOIA to withhold, in whole or in part, the records requested by the *Post* in Request 2.  CBP has wrongfully withheld agency records in violation of FOIA.

93.    The *Post* requests a declaratory judgment that CBP has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

94.    The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court direct CBP to produce the requested agency records in full and set a deadline for compliance.

## COUNT III
### Declaratory and Injunctive Relief:
### Constructive Denial of Request 3 in Violation of FOIA, 5 U.S.C. § 552

95.    The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

96.    FOIA provides this Court with "jurisdiction to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]."  5 U.S.C. § 552(a)(4)(B).

97.    The records the *Post* seeks are agency records within CBP's control.

98.    FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify the requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

99.    CBP received Request 3 on January 21, 2026.  Ex. F.

100.    Pursuant to FOIA, CBP was required to respond to Request 3 by February 19, 2026. 5 U.S.C. § 552(a)(6)(A)(i).

101.    Even assuming that the 10-day extension permitted under 5 U.S.C. § 552(a)(6)(B) applied here, CBP was required to respond to Request 3 no later than March 4, 2026.

102.    To date, however, CBP has not made and communicated to the *Post* a "determination" on Request 3 within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

103.    CBP's failure to respond constitutes a constructive denial of Request 3 under FOIA.

104.    There is no basis under FOIA to withhold, in whole or in part, the records requested by the *Post* in Request 3.  CBP has wrongfully withheld agency records in violation of FOIA.

105.    The *Post* requests a declaratory judgment that CBP has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

106.    The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court direct CBP to produce the requested agency records in full and set a deadline for compliance.

**COUNT IV**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Request 4 in Violation of FOIA, 5 U.S.C. § 552**

107.    The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

108.    FOIA provides this Court with "jurisdiction to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]." 5 U.S.C. § 552(a)(4)(B).

109.    The records the *Post* seeks are agency records within ICE's control.

110.    FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify the requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

111.    ICE received Request 4 on January 23, 2026.  Ex. I.

112.    Pursuant to FOIA, ICE was required to respond to Request 4 by February 23, 2026. 5 U.S.C. § 552(a)(6)(A)(i).

113.    Even assuming that the 10-day extension permitted under 5 U.S.C. § 552(a)(6)(B) applied here, ICE was required to respond to Request 4 no later than March 9, 2026.

114.    To date, however, ICE has not made and communicated to the *Post* a "determination" on Request 4 within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

115.    ICE's failure to respond constitutes a constructive denial of Request 4 under FOIA.

116.    There is no basis under FOIA to withhold, in whole or in part, the records requested by the *Post* in Request 4.  ICE has wrongfully withheld agency records in violation of FOIA.

117.    The *Post* requests a declaratory judgment that ICE has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

118.    The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court direct ICE to produce the requested agency records in full and set a deadline for compliance.

17

**COUNT V**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Request 5 in Violation of FOIA, 5 U.S.C. § 552**

119. The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

120. FOIA provides this Court with "jurisdiction to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]." 5 U.S.C. § 552(a)(4)(B).

121. The records the *Post* seeks are agency records within DHS's control.

122. FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify the requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

123. DHS received Request 5 on February 13, 2026. Ex. K.

124. Pursuant to FOIA, DHS was required to respond to Request 5 by March 16, 2026. 5 U.S.C. § 552(a)(6)(A)(i).

125. To date, however, DHS has not made and communicated to the *Post* a "determination" on Request 5 within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

126. DHS's failure to respond constitutes a constructive denial of Request 5 under FOIA.

127. There is no basis under FOIA to withhold, in whole or in part, the records requested by the *Post* in Request 5. DHS has wrongfully withheld agency records in violation of FOIA.

128. The *Post* requests a declaratory judgment that DHS has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

129.    The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court direct DHS to produce the requested agency records in full and set a deadline for compliance.

**COUNT VI**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Request 6 in Violation of FOIA, 5 U.S.C. § 552**

130.    The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

131.    FOIA provides this Court with "jurisdiction to enjoin [a federal] agency from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]."  5 U.S.C. § 552(a)(4)(B).

132.    The records the *Post* seeks are agency records within ICE's control.

133.    FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify the requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

134.    ICE received Request 6 on February 24, 2026.  Ex. M.

135.    Pursuant to FOIA, ICE was required to respond to Request 6 by March 24, 2026. 5 U.S.C. § 552(a)(6)(A)(i).

136.    To date, however, ICE has not made and communicated to the *Post* a "determination" on Request 6 within the meaning of 5 U.S.C. § 552(a)(6)(A)(i).

137.    ICE's failure to respond constitutes a constructive denial of Request 6 under FOIA.

138.    There is no basis under FOIA to withhold, in whole or in part, the records requested by the *Post* in Request 6.  ICE has wrongfully withheld agency records in violation of FOIA.

139.    The *Post* requests a declaratory judgment that ICE has violated FOIA and that the *Post* is entitled to immediately receive the requested records.

140.    The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court direct ICE to produce the requested agency records in full and set a deadline for compliance.

## REQUEST FOR RELIEF

WHEREFORE, the *Post* respectfully requests that this Court:

A.    Declare Defendants' failures to provide responsive records unlawful under FOIA;

B.    Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing Defendants to make the requested records available to the *Post*, unredacted, and without further delay, and setting a deadline for compliance;

C.    Provide for expeditious proceedings in this action;

D.    Award the *Post* its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.    Grant such other and further relief as the Court may deem just and proper.

Dated:  April 1, 2026             Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com

Isabella Salomão Nascimento
(*pro hac vice* forthcoming)
2000 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 371-3281 | Fax: (612) 371-3207
salomaonascimentoi@ballardspahr.com

*Counsel for Plaintiff WP Company LLC*
*d/b/a The Washington Post*